FILED

APR 1 1 2006

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

1   KERSTIN ARUSHA (SBN: 182624)
    STEPHANIE STEVENS (SBN: 236034)
2   FAIR HOUSING LAW PROJECT
    111 W. St. John St., Suite 315
3   San Jose, California  95113
    Telephone: (408) 280-2448
4   Facsimile: (408) 293-0106
    Email: stephanies@lawfoundation.org
5          kerstina@lawfoundation.org

6

7   WILLIAM J. GOINES (SBN: 61290)
    KAREN ROSENTHAL (SBN: 209419)
8   CINDY HAMILTON (SBN 217951)
    GREENBERG TRAURIG, LLP
9   1900 University Avenue, Fifth Floor
    East Palo Alto, California  94303
10  Telephone: (650) 328-8500
    Facsimile: (650) 328-8508
11  Email: goinesw@gtlaw.com
           rosenthalk@gtlaw.com
12         hamiltonc@gtlaw.com

13  Attorneys for Plaintiffs

14

15                  UNITED STATES DISTRICT COURT

16                 NORTHERN DISTRICT OF CALIFORNIA

17                          C 06 - 02530      HRL

18  JOSE RUIZ; GEORGINA RUIZ,           Case No.

19              Plaintiffs,

20  v.                                  **COMPLAINT FOR DAMAGES,
                                        INJUNCTIVE RELIEF, AND
21  DECISION ONE MORTGAGE COMPANY,      DECLARATORY RELIEF**
    LLC; AMERICAN MUTUAL FINANCIAL
22  SERVICES; JOHNNY HWANG; ASHISH      **DEMAND FOR JURY TRIAL**
    OBEROI; IMRAN NASIR; ANDREW
23  MICHAEL OLDHAM; ANITA SIU YEE
    CHEUNG,
24
                Defendants.
25

26

27

28

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

sv-fs1\27359v03

# I. INTRODUCTION

1.      This is an action for declaratory judgment, permanent injunctive relief, and damages for predatory mortgage lending, including discriminatory targeting on the basis of race and national origin. Predatory and abusive lending practices inflict wide-ranging damage on society: borrowers and their families can be devastated by these practices, which often result in nonjudicial foreclosure of the borrowers' homes. Defendants in this action preyed upon plaintiffs through predatory and abusive lending practices, including making misrepresentations about essential terms of the loans, using bait and switch tactics and duress, charging unreasonable and unearned fees, falsifying information on loan applications, failing to translate important loan documents from English to Spanish, and including unexpected and problematic loan terms such as balloon payments, pre-payment penalties, and excessively high closing costs. Plaintiffs seek rescission of the predatory loans in which they are trapped, equitable relief on behalf of the general public, and monetary damages.

# II. JURISDICTION AND VENUE

2.      Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. section 1331 in that the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367 to hear and determine plaintiffs' state law claims because those claims are related to plaintiffs' federal claims and arise out of a common nucleus of related facts and form part of the same case or controversy under Article III of the United States Constitution.

3.      The Court has jurisdiction over plaintiffs' action for declaratory relief pursuant to 28 U.S.C. section 2201 and Rule 57 of the Federal Rules of Civil Procedure. Injunctive relief is authorized by 28 U.S.C. section 2203 and Rule 65 of the Federal Rules of Civil Procedure.

4.      Venue is proper in the Northern District of California Pursuant to 28 U.S.C. section 1391(b)(2) in that the unlawful conduct that gave rise to these claims occurred within the Northern District of California.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

### III.  INTRADISTRICT ASSIGNMENT

5.     Intradistrict assignment in San Jose, California is proper because the unlawful conduct that gives rise to the alleged claims occurred in Santa Clara County.

### IV.  PREDATORY LENDING

6.     There is no uniformly accepted definition of "predatory lending." However, the United States Department of Housing and Urban Development ("HUD") has defined predatory lending as lending "involving deception or fraud, manipulation of borrowers through aggressive sales tactics, or taking unfair advantage of a borrower's lack of understanding about loan terms." *Curbing Predatory Home Mortgage Lending* (June 2000), a joint report of the Department of Housing and Urban Development and the Treasury Task Force on Predatory Lending ("HUD Report") at 1. According to HUD, "[t]hese practices are often combined with loan terms that, alone or in combination, are abusive or make the borrower more vulnerable to abusive practices." *Id.*

7.     HUD and the United States General Accounting Office ("GAO") have identified various lending practices as predatory. Since predatory lenders are constantly developing new techniques to take advantage of borrowers, any enumeration of predatory practices necessarily will be incomplete.  Nevertheless, it is generally accepted by the lending industry and government agencies that monitor that industry that predatory lending practices include: (a) engaging in aggressive, high-pressure and/or misleading sales tactics; (b) lending without regard to the borrower's ability to repay; (c) imposing excessive prepayment penalties that trap borrowers into predatory loans; (d) making misrepresentations or otherwise misleading borrowers about loan terms; (e) falsifying loan documents; (f) targeting low-income, elderly and minority borrowers for predatory lending campaigns; (g) charging excessive fees, points and interest rates unrelated to the borrower's credit/risk profile; (h) misleading borrowers about the borrower's credit/risk profile to steer borrowers to a higher-cost loan that is not justified by the borrower's true profile; and (i) causing borrowers to refinance loans multiple times over a short period of time without any economic gain to the borrowers. HUD Report at 2; *Federal and State Agencies Face Challenges in Combating Predatory Lending* (January 2004), a report by the United States General Accounting Office ("GAO

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

1  Report") at 3-4, 18-19. These and similar practices, individually and collectively, are referred to

2  herein as "predatory lending" practices.

3      8.      Predatory lenders use prepayment penalties as a means to trap borrowers into loans

4  with onerous terms. GAO Report at 19.  Borrowers cannot refinance and escape those onerous terms

5  without incurring thousands of dollars in new fees or paying prepayment penalties, further stripping

6  the equity from their homes.

7      9.      The practice of specifically targeting and aggressively soliciting protected class

8  members, such as racial/ethnic minority populations, for predatory loan products is known as

9  "reverse redlining." HUD Report at 72.

10     10.     Predatory lenders frequently deceive borrowers and engage in outright fraud through

11 practices such as falsifying loan applications. GAO Report at 19.  They also promise borrowers that if

12 they accept a loan with a high interest rate, they can refinance for a lower interest rate after a short

13 period at no cost.

14     11.     Low-income minorities and the elderly are the primary victims of predatory lending

15 practices. Predatory lenders prey on low-income minority borrowers, particularly those who may not

16 speak or read English, have little education, are financially unsophisticated and/or lack access to

17 mainstream financial outlets. HUD Report at 22; GAO Report at 25.

18     12.     Predatory lending practices often lead homeowners into a cycle of refinancing,

19 foreclosure, economic ruination and segregation from conventional credit sources.  HUD Report at

20 74.  On a larger scale, when predatory lending practices are concentrated in specific areas—as they

21 frequently are—communities suffer from destabilization through the loss of equity, distressed and

22 vacant properties, and stifled economic development. GAO Report at 20.  This causes a depression in

23 property values and requires entire neighborhoods to pay the price for the wrongful practices of

24 unscrupulous lenders.

## V. **PARTIES**

26     13.     Plaintiff GEORGINA RUIZ is a natural Hispanic person who traces her national

27 origin to Mexico. At all relevant times alleged herein, GEORGINA RUIZ was over the age of 18 and

28 a resident of Santa Clara County.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

14.     Plaintiff JOSE RUIZ is a natural Hispanic person who traces his national origin to Mexico. At all relevant times alleged in this complaint, JOSE RUIZ was over the age of 18, legally married to plaintiff GEORGINA RUIZ and resided in Santa Clara County.

15.     At all relevant times alleged in this complaint, plaintiff JOSE RUIZ spoke some English, and had limited ability to read or write in the English language. Plaintiff GEORGINA RUIZ spoke only Spanish.

16.     Accordingly, all communications alleged in this Complaint occurred in the Spanish language, except where specifically alleged otherwise.

17.     Plaintiffs are informed and believe that at all relevant times mentioned in this complaint, defendant DECISION ONE MORTGAGE COMPANY, LLC ("DECISION") was and is a North Carolina Limited Liability Company qualified to do business in the State of California, and regularly conducted business activity with Santa Clara County residents. Plaintiffs are informed and believe that DECISION business activity included subprime lending or otherwise extending credit to persons in residential real estate transactions.

18.     Plaintiffs are informed and believe that defendant AMERICAN MUTUAL FINANCIAL SERVICES ("AMERICAN MUTUAL") was and is a corporation organized and existing under the laws of the State of California, and regularly did business within the County of Santa Clara.

19.     Plaintiffs are informed and believe that defendant AMERICAN MUTUAL was and is licensed by the California Department of Real Estate as a real estate broker by designating an officer who held a valid real estate broker license.

20.     Plaintiffs are informed and believe that defendant AMERICAN MUTUAL's designated officer licensed by the California Department of Real Estate was Defendant ASHISH OBEROI ("OBEROI") until March 24, 2005.

21.     Plaintiffs are informed and believe that defendant AMERICAN MUTUAL's designated officer licenses by the California Department of Real Estate from March 24, 2005 onward from Defendant ANDREW MICHAEL OLDHAM ("OLDHAM").

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

22. Plaintiffs are informed and believe that defendant AMERICAN MUTUAL, OBEROI and OLDHAM's business activity within Santa Clara County included the brokerage of real estate and representation of parties in residential real estate transactions at all relevant times alleged in the complaint.

23. Plaintiffs are informed and believe that at all relevant times alleged herein, defendant JOHNNY HWANG ("HWANG") was a natural person over the age of 18 and was an Assistant Manager for AMERICAN MUTUAL.

24. Plaintiffs are informed and believe that at all relevant times alleged herein, defendant IMRAN NASIR ("NASIR") was a salesperson for AMERICAN MUTUAL.

25. At all relevant times alleged herein, a man named Hector was an agent and/or employee of defendants NASIR, AMERICAN MUTUAL, HWANG, OBEROI, and OLDHAM. Hector held himself out to the public as an agent and/or employee of those defendants.

26. Plaintiffs are informed and believe that at all relevant times alleged herein, defendant ANITA SIU YEE CHEUNG ("CHEUNG") was a notary public.

27. At all relevant times alleged herein, all of the defendants were agents, servants and employees of each other and were acting within the scope of such agency or employment while engaged in the acts, omissions and other conduct alleged in this complaint, or the alleged acts, omissions and other conduct of each defendant were subsequently ratified or adopted by the other defendants.

## VI. **STATEMENT OF FACTS**

28. JOSE RUIZ and GEORGINA RUIZ purchased a home in San Jose in or about July 2004 for $485,000.

29. JOSE RUIZ works as a truck driver for a pool cleaning company. He earns $2,000 to $2,200 per month. He also has a side business of cleaning pools himself on the weekends, where he earns $1,400-1,500 per month. He understands a limited amount of spoken English, and has a limited ability to read or write in the English language.

30. GEORGINA RUIZ works as a housecleaner and makes approximately $2,000 per month. She speaks only Spanish.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

31.     JOSE RUIZ and GEORGINA RUIZ's original purchase loans were as follows: monthly payments including both principal and interest, totaling $3,422, based on one loan payment of $2,516 with a 7.1% adjustable rate, and a second loan payment of $906 with a 10.8% fixed rate. Neither loan had a balloon payment.

32.     In or about March 2005, a Spanish speaking man named Hector contacted JOSE RUIZ by phone and solicited him to refinance the home mortgage on his residence in San Jose. Hector identified himself as a representative of defendant HWANG. JOSE RUIZ told Hector he would consider refinancing his existing mortgages if he could access about $5,000-$10,000 in equity, and lower his monthly payments and interest rate. Hector told JOSE RUIZ that he could help him refinance to do everything he wanted and that "everything would be lower." Hector also told JOSE RUIZ, "Don't worry, we're honest."

33.     A few days later there was a second meeting in person between JOSE RUIZ, Hector, NASIR, and HWANG at the AMERICAN MUTUAL office in San Jose, California. They discussed a loan product with JOSE RUIZ that would allow him and GEORGINA RUIZ to get $5,000-$10,000 out, and lower their monthly payments to $800. In this meeting representatives of AMERICAN MUTUAL told plaintiffs that they would "help them out" by lowering their interest rate and getting them a loan that would be "much better" than the one they had at the time. Defendants repeatedly told plaintiffs that they could trust them to do what they had promised. Indeed, the AMERICAN MUTUAL defendants made statements that were calculated to earn the trust of JOSE and GEORGINA RUIZ and in fact they trusted defendants and understood their statements to mean that AMERICAN MUTUAL would secure a refinance loan for them with lower payments and more favorable economic terms than their existing loan.

34.     HWANG and NASIR entered false information regarding plaintiffs' income on plaintiffs' loan application. HWANG and NASIR entered such false information on plaintiffs' loan application with the intent to obtain fees on a loan transaction that would not otherwise occur, and to make plaintiffs' loan application more appealing so that they could consummate a loan and thereby earn the associated fees.

35.     Three weeks later, on approximately April 4, 2005, around 6:00 p.m., JOSE RUIZ and GEORGINA RUIZ went to AMERICAN MUTUAL's office to sign the loan papers.

36.     When they arrived at AMERICAN MUTUAL's office, HWANG, NASIR, and Hector were present.  Plaintiffs learned for the first time that they would be getting $34,000 cash out, that they would have two loans, and that there would be a prepayment penalty.  Defendants failed to inform them that there would be a balloon payment or that the rate was variable.

37.     Based on the statements of Defendants HWANG, NASIR and Hector, plaintiffs believed that they were signing loan documents that contained terms that were consistent with those JOSE RUIZ had previously discussed with HWANG, namely, for refinance loans with lower monthly payments and more favorable economic terms than his existing loans.  Plaintiffs reasonably relied on the statements made by HWANG and NASIR about the loan, and they would not have entered into the transaction if they did not believe that they were getting the loan that HWANG and NASIR had promised him.

38.     In fact, HWANG and NASIR knew that those statements made to JOSE RUIZ were false.  HWANG and NASIR made those statements with the intent to dupe JOSE RUIZ into signing a refinance loan with unfavorable economic terms that were worse than his previous loan and with financial responsibilities they knew plaintiffs would not be able to meet.

39.     HWANG rushed plaintiffs through the signing, and did not explain to plaintiffs that they had a three day right to cancel.  Defendants told plaintiffs that they would get no money unless they signed.  Plaintiffs felt that they had no choice but to sign the documents.

40.     No copies were provided to plaintiffs beforehand and only unsigned copies were provided at closing.

41.     Plaintiffs did not meet or observe any notary on April 4, 2005, although they were charged a notary fee of $200 for service by CHEUNG.  Plaintiffs did not interact with any women during this meeting.

42.     Defendants charged plaintiffs unearned and unreasonable fees, which include, but are not limited to, the following:

a.    $15,540 loan origination fee which defendants charged without any supporting information of what services were performed to warrant this charge;

b.    $300 "processing" fee, which should be encompassed within the high origination fee that was charged;

c.    $1,200 broker fee, which is also duplicative given the high origination fee.

43.    Defendants also split fees, including but not limited to:

a.    $666 to the Santa Clara County Tax Collector including a $300 charge purportedly for a "tax lien" that never existed on the property and was never paid to the tax collector (and thus was a portion retained by defendants);

b.    $200 to CHEUNG, which is in excess of statutory notary fees and for no or fraudulent services rendered as none of plaintiffs' signatures was properly notarized.

44.    On or about April 11, 2005 at approximately 6:00 p.m., JOSE RUIZ received a phone call from Hector telling him that his money was ready and to come right away to the AMERICAN MUTUAL office. At that time, JOSE RUIZ received his cash out check in the amount of $34,099.

45.    That night JOSE RUIZ spoke with his friend, Jose Luis, who is in the mortgage lending business and mentioned that he had just refinanced his home and believed he had gotten a good deal. However, after inquiring about the terms of the loan Jose Luis asked to review the documents and notified JOSE RUIZ that he had been overcharged.

46.    Shortly thereafter, JOSE RUIZ went back to HWANG's office. He inquired about being overcharged and was told that because he had already signed the loan documents they could not do anything about it. However, they did tell JOSE RUIZ that in a year they could refinance the loan at no cost. JOSE RUIZ asked to get this promise in writing and was told to come back for such a letter.

47.    JOSE RUIZ went back to the AMERICAN MUTUAL office on two occasions after that for said letter, but the letter was never available for him.

48.    The closing date of the refinance was April 11, 2005.

49.    Plaintiff's first loan now has a $2,543 monthly payment, a 6.875% interest rate for two years, then variable rate of 5.875 percentage points above the LIBOR index, $444,000 principal,

1    interest only for the first five years, and is a 30 year loan. Therefore, the variable rate can climb to

2    12.875%, but can never be below 6.875%.

3         50.    Plaintiffs' second loan now has a $1,067 monthly payment, with 11.25% rate,

4    $111,000 principal for 15 years. At the end of 15 years there is a $94,000 balloon payment.

5         51.    Plaintiffs' combined monthly mortgage payments total over $3,500 and are

6    unaffordable to Plaintiffs based on their current monthly income.

7         52.    Contrary to defendants' knowingly false promises, plaintiffs' monthly payments did

8    not decrease, their interest rates were higher than their previous loans, and their debt on their home

9    increased by $60,087.

10        53.    Plaintiffs were unsophisticated and unable to consummate real estate transactions

11   without the assistance of real estate professionals. Accordingly, plaintiffs reasonably relied on all

12   defendants in their refinance.

13        54.    Plaintiffs are informed and believe that all of the documents related in any way to their

14   refinance, including written contracts and all mandated disclosures that are intended for the

15   protection of consumers and borrowers such as plaintiffs, were written in the English language even

16   though all aspects of the transaction were discussed and negotiated in the Spanish language.

17        55.    Defendants DECISION and AMERICAN MUTUAL have a pattern and practice of

18   specifically targeting their products and services, which were inferior and/or predatory, to Hispanic

19   home owners.

20        56.    Plaintiffs are informed and believe and, on that basis, allege that persons not of

21   plaintiffs' national origin, color or race, who were no better qualified financially for a mortgage loan

22   than plaintiffs, were not issued predatory loans with exorbitant closing costs and fees, misrepresented

23   terms, and backdated documents to circumvent legal protections.

24        57.    Defendant DECISION issued a disproportionate number of subprime loans, likely to

25   be predatory as described in the preceding paragraph, to Hispanic borrowers in Santa Clara County,

26   during 2002-2005.

27        58.    Defendant DECISION issued a disproportionate number of higher-cost loans, likely to

28   be predatory, to Hispanic borrowers in Santa Clara County.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

## VII. INJURIES

59.     In April 2005, when the plaintiffs refinanced through defendants, plaintiffs did not have a sufficient combined income that would allow them to meet their monthly mortgage payments and satisfy all of their other financial obligations.

60.     Because of their modest income, plaintiffs struggle to meet their monthly mortgage payments. As a result, plaintiffs have suffered and continue to suffer monetary damages because of the fact that they have made monthly payments and continue to make monthly payments that are higher than what they agreed to pay. Plaintiffs also have experienced and continue to experience emotional distress as a result of defendants' actions.

61.     Plaintiffs' new loan contains terms that are substantially worse than the terms of their original loan, including but not limited to, the fact that

    a.     Plaintiffs' monthly payments are now higher;

    b.     Plaintiffs' previous loan payment included interest and principal, but plaintiffs' new loan only pays interest and does not reduce principal;

    c.     Plaintiffs now have a balloon payment of $94,000;

    d.     Plaintiffs' second loan only has a 15 year term;

    e.     The debt on plaintiffs' home increased by $60,087.

62.     Plaintiffs have tendered numerous monthly payments of approximately $3,500 each to defendants for their ostensible obligations under the refinance.

63.     The monthly mortgage payments on the first loan are fixed for only two years and thereafter will periodically increase and force plaintiffs into foreclosure.

64.     There now exists an actual controversy between the parties regarding defendants' duties under applicable law. Therefore, plaintiffs are entitled to declaratory relief.

65.     Defendants have illegally gained fees and profit from plaintiffs as described herein. Therefore, plaintiffs are entitled to restitution.

66.     Unless enjoined, defendants will continue to engage in the unlawful acts described above. Plaintiffs continue to suffer irreparable harm from defendants unlawful acts unless relief is provided by this court. Accordingly, plaintiffs are entitled to injunctive relief.

67.   Defendants acted intentionally, maliciously, wantonly, recklessly and in bad faith as described herein.  Accordingly, plaintiffs are entitled to punitive damages.

## VIII.  CLAIMS

### FIRST CLAIM
**Real Estate and Settlement Procedures Act, 12 U.S.C. § 2607(a) *et seq.* and
Federal Reserve Regulation X, 24 C.F.R. § 3500 *et seq.*
(Plaintiffs against all Defendants)**

68.   Plaintiffs hereby  incorporate by reference the allegations of paragraphs 1 through 67, inclusive, as though fully set forth herein verbatim.

69.   The loans to plaintiffs by defendant DECISION are federally related mortgage loans as defined in the Real Estate Settlement Procedures Act ("RESPA") and implemented by Regulation X.

70.   RESPA also prohibits any person from accepting an excessive or unearned fee.

71.   DECISION, AMERICAN MUTUAL, HWANG, OBEROI, NASIR, OLDHAM and CHEUNG violated RESPA by charging excessive fees and accepting unearned fees.  Defendants charged a total of $25,986 in fees, most of which are unearned, duplicative and unreasonable which include, but are not limited to, the following fees:

a.   $15,540 loan origination fee which defendants charged without any supporting information of what services were performed to warrant this charge.  This loan origination fee is actually a kickback for referral fee under 12 U.S.C. § 2607(a) with no ascertainable services performed by the broker for the portion of this fee they received;

b.   $300 "processing" fee, which should  be  encompassed  within  the  high origination fee that was charged;

c.   $1200 broker fee, which is also duplicative given the high origination fee;

d.   $300 charge for a "tax lien estimate"; however, no lien has ever been recorded by the County of Santa Clara;

e.   $200 for a notary fee, when no or fraudulent notary services were employed.

72.   Fees paid to defendants were unlawful kickbacks and/or unearned fees under RESPA because they were not reasonably related to the performance of lawful services.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

73. Defendants split fees with each other and other third parties, including but not limited to the tax collector and notary.

74. Defendant DECISION should have known that AMERICAN MUTUAL, HWANG, OBEROI, NASIR, CHEUNG, and OLDHAM did not earn the origination fees, and improperly charged a tax lien estimate when no tax lien ever existed because "…common industry practice is that lenders follow underwriting standards that demand a review of originations and therefore lenders typically know that brokers have performed the services required…" HUD's 2001-1 Policy Statement at 53055. If defendant DECISION had reviewed plaintiffs' loan origination, DECISION would have learned of the obvious red flags it contained.

75. By the actions described herein and as a proximate cause of defendants' conduct, plaintiffs were damaged in an amount to be proven at trial but not yet ascertained.

76. Pursuant to 12 U.S.C. § 2607(d), plaintiffs are entitled to recover from defendants an amount equal to three times the amount of these unearned fees, as well as actual damages, court costs, attorneys' fees and any other amounts or damages permissible under RESPA.

77. By the actions described herein and as a proximate cause of defendants' conduct, plaintiffs were damaged in am amount to be proven at trial but not yet ascertained.

WHEREFORE, plaintiffs pray for relief as set forth below.

### SECOND CLAIM
#### Violation of the Fair Housing Amendments Act
#### 42 U.S.C. §3601 *et seq.*
#### (Plaintiffs against all Defendants except CHEUNG)

78. Plaintiffs hereby incorporate by reference all allegations of paragraphs 1 through 77.

79. Plaintiffs are members of a protected class, their race as Hispanic and their national origin from Mexico, and defendants DECISION, AMERICAN MUTUAL, HWANG, NASIR, OBEROI and OLDHAM, by their conduct as alleged herein, unlawfully discriminated against Plaintiffs based on their protected class status.

- The loan transactions at issue in this case were a residential real estate-related transaction within the meaning of the Fair Housing Act, 42 U.S.C. § 3605(a) ("FHA").

- Plaintiffs' home, which is the subject of plaintiffs' claims, is real property that constitutes a "covered" dwelling within the meaning of FHA, 42 U.S.C. §§ 3602 and 3604.

80.    Plaintiffs are covered persons within the meaning of FHA, 42 U.S.C. §§ 3602. With regard to the discriminatory housing practices alleged, they constitute aggrieved individuals within the meaning of FHA, 42 U.S.C. §§ 3602.

81.    Defendants' businesses include engaging in residential real estate transactions within the meaning of FHA, 42 U.S.C. §§ 3605(a), as well as 24 C.F.R. § 100.115(a).

82.    The business of defendants includes engaging in residential real estate transactions within the meaning of FHA, 42 U.S.C. §§ 3605(a), these defendants are all brokers or agents within the meaning of 24 C.F.R. §§ 100.115(b) and 100.20, and these defendants' business includes engaging in the selling, brokering or appraising of residential real property within the meaning of 24 C.F.R. § 100.135(a).

83.    As set forth above, defendants DECISION and AMERICAN MUTUAL, through their authorized representatives and agents, have violated 42 U.S.C. §§ 3604 and 3605 by issuing predatory mortgage loans designed to fail with high interest rates, closing costs and fees to Hispanic borrowers (many of whom speak and read little or no English), including plaintiffs, because of their race, color and national origin.

84.    Defendants DECISION and AMERICAN MUTUAL specifically targeted their products and services, which were inferior and/or predatory, to Hispanic home owners, including plaintiffs, and therefore discriminated against plaintiffs based on their race and national origin in violation of 42 U.S.C. §§ 3604 and 3605.

85.    Plaintiffs are informed and believe and, on that basis, allege that persons not of plaintiffs' national origin, color or race, who were no better qualified financially for a mortgage loan than plaintiffs were not issued predatory loans with exorbitant closing costs and fees, misrepresented terms, and backdated documents to circumvent legal protections. Defendants disproportionately issued predatory loan products to Hispanic borrowers compared to non-Hispanic loan borrowers

86. By the actions described herein and as a proximate cause of defendants' conduct, plaintiffs have been damaged, as set forth above.

### THIRD CLAIM
### Violation of the Fair Employment and Housing Act
### Cal. Gov't Code § 12955 *et seq.*
### (Plaintiffs against all Defendants except CHEUNG)

87. Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 86 inclusive, as though fully set forth herein verbatim.

88. The actions of defendants DECISION, AMERICAN MUTUAL, HWANG, NASIR, OBEROI and OLDHAM, as detailed above in regard to plaintiffs loan were "real estate-related transactions," including making or purchasing of loans or providing financial assistance secured by residential real estate and the brokering of residential real property, as defined by Cal. Gov't Code § 12927(h).

89. As set forth above, defendants, through their authorized representatives and agents, violated Cal. Gov't Code § 12955(e), (g), and (i) by issuing predatory mortgage loans designed to fail with high interest rages, closing costs and fees to Hispanic borrowers, including plaintiffs, because of their race, color, and national origin.

90. Defendants specifically targeted their products and services, which were inferior and/or predatory, to Hispanic home owners, and gave lenders less favorable terms and fees based on race, color and national origin.

91. By the actions described herein and as a proximate cause of defendants' conduct, plaintiffs have been damaged, as set forth above.

### FOURTH CLAIM
### Fraud
### (All plaintiffs against AMERICAN MUTUAL, HWANG AND NASIR)

92. Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 91, inclusive, and the allegations in all of the other claims alleged in this complaint, as if fully set forth herein verbatim.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

93.     Defendants AMERICAN MUTUAL, HWANG, and NASIR knowingly and willfully induced plaintiffs to enter into the refinance loan agreements by making false oral statements and omitting material information regarding the terms of the loan and plaintiffs' application.

94.     Specifically, AMERICAN MUTUAL, through HWANG and NASIR falsely represented that they secured a refinance mortgage loan for plaintiffs that required lower payments than the $3,422.  Plaintiffs were already paying under their existing loan, inclusive of principal, interest and impound fees.

95.     In fact, defendants knew that they did not obtain a loan for plaintiffs on those terms.

96.     Defendants made these false statements with the intent to induce plaintiffs to rely on them so that defendant would receive its brokerage fees upon the closing of the refinance loan.

97.     Defendants specifically withheld loan documents translated into Spanish to prevent plaintiffs from discovering the exact terms of the loans defendants had procured.

98.     Plaintiffs reasonably relied on all such misrepresentations and omissions.  Absent those misrepresentations and omissions, plaintiffs would not have entered into the loan transactions.

99.     Plaintiffs have been harmed by defendants' fraudulent conduct in an amount to be proven at trial.

100.    In their conduct alleged herein, defendants acted with oppression, malice and fraud so as to entitled plaintiffs to punitive damages in an amount sufficient to punish defendants for their wrongful conduct.

WHEREFORE, plaintiffs pray for relief as set forth below.

## FIFTH CLAIM
### Violation of the Unfair Competition Act
### California Business and Professions Code § 17200 *et seq.*
### (All Plaintiffs against DECISION and AMERICAN MUTUAL)

101.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 100, inclusive, and the allegations in all of the other claims alleged in this complaint, as if fully set forth herein verbatim.

102.    Plaintiffs are informed and believe, and on that basis allege, that defendants have been engaged in, and continue to engage in, numerous acts and/or a pattern and practice of unfair

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

competition within the State of California in violation of Business and Professions Code § 17200 *et seq.*, proscribing deceptive business practices. These unfair business practices include, without limitation, the following:

a.     Engaging in predatory lending practices in dealings with plaintiffs including, but not limited to, the use of high pressure sales tactics and the falsification of loan application information;

b.     Self-dealing at the expense of borrowers;

c.     Failing to provide notices and disclosures required by RESPA;

d.     Discriminating on the basis of race, national origin, or unlawful criteria;

e.     Violating RESPA; violating the False Advertising Act, California Business and Professions Code § 17500 *et seq.*, or any other applicable statute;

f.     Failing to provide Spanish translations as required by California Civil Code § 1632; and

g.     Charging and collecting fees in excess than those permitted under statute.

103.     The above-described unlawful, unfair and fraudulent business practices are an ongoing threat of injury to plaintiffs and the general public. Plaintiffs and the general public continue to be financially harmed by such conduct and, unless restrained, defendants will continue to engage in such conduct.

104.     Pursuant to California Business and Professions Code § 17203, plaintiffs are entitled to an order of this Court enjoining defendants from continuing to engage in unfair competition, as defined in Business and Professions Code § 17200, in the State of California. Plaintiffs and the general public will be irreparably harmed if such an order is not granted.

105.     Defendants have been unjustly enriched at the expense of the plaintiffs who therefore are entitled to equitable restitution and disgorgement of profits realized by defendants.

106.     Moreover, because plaintiffs bring this action on behalf of themselves and on behalf of the general public, they are entitled to reasonable attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

WHEREFORE, plaintiffs pray for relief as set forth below.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

**SIXTH CLAIM**
**Breach of Fiduciary Duty**
**(All Plaintiffs against AMERICAN MUTUAL, OBEROI, OLDHAM, HWANG AND NASIR)**

107.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 106, inclusive, as if fully set forth herein verbatim.

108.   California law imposes on the real estate agents and mortgage brokers, as fiduciaries, the same obligation of undivided service and loyalty that it imposes on a trustee in favor of a beneficiary.

109.   Defendants AMERICAN MUTUAL, OBEROI, OLDHAM, HWANG AND NASIR owed plaintiffs fiduciary duties of utmost loyalty, good faith and diligence and breached those duties by, *inter alia*:

   a.   Misleading plaintiffs to believe that their monthly mortgage payments would be lower than they ultimately were;

   b.   Failing to explain the terms of the loan transactions to plaintiffs;

   c.   Inducing plaintiffs to sign loan documents by either misrepresenting the terms or failing to disclose the terms;

   d.   Failing to disclose all charges incurred in connection with the refinance;

   e.   Inducing plaintiffs to sign a loan that is more financially burdensome than their original loan;

   f.   Falsifying plaintiffs' income and assets on their loan application.

110.   Defendants engaged in the conduct alleged herein for the purpose of advancing their own financial interest and in callous disregard of the foreseeable financial consequences to plaintiffs.

111.   Defendants failed to act diligently by failing to evaluate plaintiffs' ability to repay the loans, failing to disclose all material terms of the transaction, and failing to comply with applicable consumer protections intended to benefit plaintiffs.

112.   As a result of defendants' breach of their fiduciary duties to plaintiffs, plaintiffs have sustained damages to be proven at trial but not yet ascertained.

113.   Defendants' conduct as alleged herein was a substantial factor in causing the damages sustained by plaintiffs.

1    WHEREFORE, plaintiffs pray for relief as set forth below.

2    **SEVENTH CLAIM**
**Professional Negligence**
3    **(All Plaintiffs against all Defendants except CHEUNG)**

4    114.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 113,

5    inclusive, as if fully set forth herein verbatim.

6    115.    Because a mortgage loan broker and a mortgage loan lender are required to exercise

7    reasonable care and diligence in any transaction and is bound to exercise his or her skill for the

8    benefit of the principal, the agent is liable for any damages suffered by the principal as a result of any

9    negligence in the performance of his or her agency duties.

10   116.    Defendants owed plaintiffs a duty to act with that degree of skill, prudence and

11   diligence as other mortgage brokers and lenders of ordinary skill and capacity in the performance of

12   the services that they undertake.

13   117.    A reasonably prudent mortgage loan broker and mortgage loan lender would not have

14   directed plaintiffs to the DECISION loan products nor originated such loans.

15   118.    Defendant DECISION acted negligently in failing to properly consider, investigate,

16   evaluate or audit plaintiffs' loan application and/or ability to repay loans.

17   119.    Plaintiffs are informed and believe that defendants also failed to consider the usual

18   underwriting factors for assessing creditworthiness when they loaned to plaintiffs, and in fact

19   defendants AMERICAN MUTUAL, through HWANG and NASIR, falsified plaintiffs' loan

20   application and deceived plaintiffs as to the true terms of the loan.

21   120.    Defendants knew or should have known to utilize the best practices for underwriting,

22   originating and issuing loans when considering the DECISION loans to plaintiffs but negligently

23   failed to do so.

24   121.    Defendants AMERICAN MUTUAL, through HWANG and NASIR, breached its duty

25   by encouraging plaintiffs to sign a loan with different terms than those they had represented to

26   plaintiffs.

27   122.    By their conduct as alleged herein, defendants were the proximate cause of damages

28   sustained by plaintiffs in an amount to be proven at trial but not yet ascertained.

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

WHEREFORE, plaintiffs pray for relief as set forth below.

### EIGHTH CLAIM
**Violation of California Civil Code § 1632**
**(Plaintiffs against all Defendants except CHEUNG)**

123.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 122, inclusive, as if fully set forth herein verbatim.

124.   Defendants failed to provide any loan documentation in the Spanish language despite the fact that the loans were negotiated in Spanish.

125.   Pursuant to subdivision (k) of California Civil Code § 1632, defendants must allow plaintiffs to rescind such loans.

126.   Pursuant to California Civil Code § 1691(b), this complaint serves as notice of rescission.

127.   Plaintiffs are entitled to rescind the loans and are entitled to equitable restitution.

WHEREFORE, plaintiff prays for relief as set forth below.

### NINTH CLAIM
**Rescission/Cancellation**
**California Civil Code § 1689 and Court's Inherent Equitable Authority**
**(Plaintiffs against all Defendants except CHEUNG)**

128.   Plaintiffs hereby incorporates by reference the allegations of paragraphs 1 through 127, inclusive, as if fully set forth herein verbatim.

129.   Plaintiffs' signatures on the loan was obtained by fraud, duress and undue influence.

130.   The terms of the loans were never explained to plaintiffs.

131.   At the time that plaintiffs signed the note, they were not aware that it contained the following unconscionable terms:  A balloon payment of $94,000, an interest rate of 11.125%, and interest only payment terms.

132.   The note was in English even though all discussion about the note occurred in Spanish only.

133.   Plaintiffs received no bargained-for exchange of consideration for their purported obligations under the note.

134.    Plaintiffs are entitled to rescission and/or cancellation of the note, *inter alia*, pursuant to California Civil Code § 1689.

### TENTH CLAIM
**Violation of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.***
**(Plaintiffs against DECISION and AMERICAN MUTUAL)**

135.    Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 134 inclusive, as though fully set forth herein verbatim.

136.    Plaintiffs are natural persons and residents of the state of California and of the United States.

137.    Defendants DECISION and AMERICAN MUTUAL are financial institutions within the meaning of section 1691 of the Consumer Credit Protection Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.* ("ECOA").

138.    Defendants DECISION and AMERICAN MUTUAL do business in the state of California and are subject to the jurisdiction of this Court.  At all times relevant herein, defendants in the ordinary course of business, regularly extended, offered to extend or arranged for extension of credit to its consumer customers for which a finance charge was imposed.

139.    Plaintiffs entered into a credit transaction with defendants to which defendants imposed finance charges.

140.    The conduct of defendants alleged herein constitutes a violation of ECOA.

141.    Defendants discriminated against plaintiffs based on race, color, and national origin in their credit and finance practices, determination of borrower creditworthiness, provision of services in connection with the offering of credit and making loan transactions, and in the terms or conditions of such transactions.

142.    By the actions described herein and as a proximate cause of defendants' conduct, plaintiffs have been damaged, as set forth above.

WHEREFORE, plaintiffs prays for relief as set forth below.

**ELEVENTH CLAIM**
**Notary Malfeasance**
**California Government Code § 8214**
**(Plaintiffs against CHEUNG)**

143.   Plaintiffs hereby incorporate by reference the allegations of paragraphs 1 through 142 inclusive, as though fully set forth herein verbatim.

144.   Plaintiffs are informed and believe that in her official capacity as a notary public, defendant CHEUNG either falsely notarized plaintiffs' signatures on loan documents or did not notarize plaintiffs signatures at all but charged a $200 fee.

145.   California Government Code § 8206 requires that during the notarization process a notary public obtain the thumbprint of the signatory to any instrument to be notarized when such instrument affects title to real property.

146.   Defendant CHEUNG never met plaintiffs and does not have an entry in her official notary journal for the loan documents that she either falsely notarized or did not notarize loan documents at all but charged a $200 fee.

147.   Defendant CHEUNG engaged in official misconduct or neglect when she falsely notarized loan documents or did not notarize loan documents at all but charged a $200 fee.

148.   Defendant CHEUNG violated California Government Code §§ 8207, 8211 and 8224.1 and therefore is liable to plaintiffs under California Government Code § 8214.

149.   As a proximate result of defendant CHEUNG's malfeasance as alleged herein, plaintiffs have suffered damages in an amount to be proven at trial but not yet ascertained.

WHEREFORE, plaintiffs pray for relief as set forth below.

## IX. RELIEF

Wherefore, plaintiffs pray for the following relief:

1.   That the Court assume supplemental jurisdiction over all state law claims, pursuant to 28 U.S.C. § 1367;

2.   That the Court declare that defendants violated applicable provisions of federal and state law;

COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF; DEMAND FOR JURY TRIAL
sv-fs1\27359v03

3.   That the Court enjoin all unlawful practices complained of in this action and impose affirmative injunctive relief requiring defendants, their partners, agents, employees, assignees, and all persons acting in concert or participating with them, to take affirmative action to immediately implement policies designed to ensure: (1) that all prospective borrowers' loan applications do not contain false information, (2) a thorough evaluation of all prospective borrowers' ability to repay any loans made available to them, (3) training regarding applicable lending laws for all of defendants' employees and agents, (4) translate disclosure documents into Spanish if negotiated in Spanish and (5) eliminating discriminatory policies and practices;

4.   That the Court order defendants to immediately rescind the loans and return all costs to plaintiffs associated with the loans;

5.   That the Court award compensatory and punitive damages, where appropriate, to plaintiffs according to proof;

6.   That the Court award plaintiffs costs of suit, including reasonable attorney's fees; and

7.   That the Court award plaintiffs all other relief as the Court deems just.

Dated: April 11, 2006.                          GREENBERG TRAURIG, LLP


                                    By: *Cindy Hamilton*
                                          William J. Goines
                                          Karen Rosenthal
                                          Cindy Hamilton
                                          Attorneys for Plaintiffs
                                          Jose and Georgina Ruiz

sv-fs1\27359v03